432 So.2d 350 (1983)
STATE of Louisiana
v.
Brian K. HERNANDEZ.
Nos. 82 KA 1028 to 82 KA 1030.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*351 Ossie B. Brown, Dist. Atty. by Brett L. Grayson, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Ernest Smithling, Vincent Wilkins, Jr., Asst. Public Defenders, Baton Rouge, for defendant-appellant.
Before COVINGTON, LANIER and ALFORD, JJ.
COVINGTON, Judge.
Defendant, Brian K. Hernandez, was charged by bill of information with four counts of simple burglary in violation of La.R.S. 14:62 and by another bill of information with three counts of felony theft in violation of La.R.S. 14:67. He pled not guilty to all charges. However, in separate trials, a jury found him guilty as charged on the four counts of simple burglary, and returned a verdict of guilty of three counts of attempted theft on the second charge. On appeal he raises in brief two assignments of error[1]: 1. The trial court erred when it admitted defendant's statement into evidence; 2. The trial court erred by imposing excessive sentences.
On December 9, 1980, the defendant, along with two friends[2], took three motorcycles from the Sherwood Forest subdivision of Baton Rouge. As they were speeding down I-10, they came to the attention of the police who began pursuit. The other cyclists wrecked and were apprehended by *352 the police, who at that time recovered an assortment of jewelry and silverware that had been stashed in the saddlebags of one of the motorcycles. These articles had been taken from several residences by the three a few days earlier. At this time the defendant escaped the police by fleeing on foot, but after being implicated by one of his partners in crime, he was arrested on December 30, 1980.

Assignment of Error # 1
The defendant alleges that the trial court erred by admitting into evidence a statement he made to police at the time of his arrest. At that time he responded to questions posed by the police, and admitted being involved in a motorcycle chase with police on December 9, 1980 and that the jacket he was wearing at the time of the arrest was the same one he wore on the night of the chase (a description of the suspect and the jacket had been circulated).
The issue presented by this assignment of error is whether the defendant's statement is admissible as a free and voluntary confession. Pursuant to La.R.S. 15:451, the State has the burden of proof concerning the voluntariness of the statement and must rebut the defendant's specific allegations. State v. Seratto, 424 So.2d 214 (La.1982). The trial judge, in deciding whether a confession is admissible, must consider the totality of the circumstances of the case. Id., at 221.
In this case the defendant denied that he made a statement and also claimed that he made a false statement. However, Detective Emile Bourgoyne testified that when the defendant was arrested, he admitted that he was involved in a motorcycle chase with police and that the jacket he was wearing was the one he had on the night of the chase. Detective Bourgoyne also testified that he gave the Miranda warnings to defendant and that no threats, promises, coercion, or duress were used in order to elicit a statement from the defendant. At the time of his arrest the defendant stated that he did not want to make a written or taped statement but he voluntarily answered a few questions. At trial he testified as follows:
Q. Did you understand that you had a right not to talk to them or give them any statements?
A. Yes, sir.
Q. Did you in fact talk to them?
A. Yes, after a little bituhhe asked me a few questions and I told, you know,uhI never did really tell him anything to amount to anything. He just asked me a few questions and I didn't really give him a straight answer.
Q. Why did you tell him anything at all?
A. Because he offered to help me. He told me he couldn't do very much but he would help me if I gave him a statement. I told him I wasn't going to give a recorded or a written statement.
Q. Did he tell you specifically what he would do? How he would help you?
A. He said that he would try to help me out as much as he could. He didn't say what he was going to do or how he was going to do it. He just said he would try to help me.
Q. Was it based upon that you gave him the statement that you did give him?
A. What?
Q. Did you give him a statement that you in fact gave based on his promise to help you as best he could?
A. I don't even know what statement I gave him. I don't never remember giving him a statement to anything but he asked me a few questions and I answered it, you know.
Q. Do you remember what the questions were?
A. No,uhsomething about some burglary charges. That is all I remember.
In finding the confession admissible the trial judge stated:
The court finds from the evidence that beyond a reasonable doubt the accused was properly advised of all of his constitutional rights and even from his testimony *353 that he understood those rights. The court finds beyond a reasonable doubt that there were no promises, coercion, duress, force or threats used upon the defendant to obtain a statement. As a matter of fact from the defendant's testimony he says that he didn't even give a statement in relation to this case whatsoever. So, even assuming that there had been some kind of a promiseuhwhich I don't find from the evidence was givenuhhe still didn't follow through with his part of the promise, because whatever he said, he said was a pack of lies. He didn't even comply with what he had told the trooper even accepting his own testimony. At any rate the issue is not whether a statement was made freely and voluntary. It is simply whether or not there was a statement. The defendant says he doesn't recall giving one. Trooper Bourgoyne states unequivocally that the defendant did make a statement. At any rate the State has fulfilled their obligation of proving those factors that I must be satisfied beyond a reasonable doubt. Whatever statement was made in relation to this case will be admitted to the jury.
In view of such contradictory testimony we note that the determination of credibility is a function of the trier of fact. State v. Robertson, 421 So.2d 843 (La.1982). Additionally, once a trial judge has determined that the State has met its burden of proof with regard to the voluntariness of a confession his decision is entitled to great weight on review. State v. Lindsey, 404 So.2d 466 (La.1981).
In State v. Vernon, 385 So.2d 200 (La. 1980), the defendant, subsequent to receiving the Miranda warnings, consented to questioning and his confession was admitted at his trial for first degree murder. On appeal he alleged that he had been promised a charge of aggravated battery as inducement for his cooperation. The Court found, however, that this allegation was specifically rebutted by testimony of police officers. It went on to state:
The mere fact that one officer told Vernon that the district attorney would be advised of any cooperation can not be considered sufficient inducement to vitiate the free and voluntary nature of the confession. Id., at 204.
Likewise, we find that even if defendant's testimony that the officers made a vague promise to "help" was acceptable, it is insufficient to negate the voluntary nature of his responses. Accordingly, we find no abuse of discretion in the trial judge's decision to admit the confession as evidence; therefore, this assignment of error is without merit.

Assignment of Error # 2
Defendant also alleges that the trial court erred by imposing excessive and illegal sentences. At sentencing, the defendant was adjudicated a habitual offender as he had a previous felony conviction. For each of the four counts of burglary the defendant received the following sentences:
1. Twelve years at hard labor, with the sentences to be served concurrently.
2. Payment of the costs of prosecution in this case or serve one year in the parish prison.
3. Payment of a fine of $2,000.00, or furnish proof of restitution to the victims in each count in the amount of $2,000.00, or serve one year in parish prison.
The following sentences were given for the three counts of attempted theft:
1. Payment of a $200.00 fine or in default thereof, serve 60 days in prison; and the costs of prosecution and victim reparation cost or, in default of such payment, serve six months in prison.
2. One year in the parish prison for each count, with the sentences to run concurrently with each other but consecutive to the sentences for burglary.
The first issue is whether the sentence imposed is illegal because the trial court ordered defendant to make restitution to the victims in lieu of payment of a fine. *354 Article 895.1 of the Code of Criminal Procedure permits a judge to provide for restitution as a portion of a probated sentence. No provision authorizes restitution as an alternative to the fine when a defendant is sentenced to imprisonment. Accordingly, the sentence imposing restitution in lieu of payment of a fine is illegal, and as such, we remand this case for resentencing. See La. C.Cr.P. arts. 882 and 913(B).
The second issue to be considered is whether the sentence imposed is excessive because the trial court imposed the maximum sentence of imprisonment as well as the maximum fine and also imposed an additional sentence in the event of default in payment of the fine.
This issue was dealt with by the Supreme Court in Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). In this case it was held that the Equal Protection Clause of the Fourteenth Amendment prohibits the discrimination that results when the total prison term that a defendant must serve exceeds the maximum statutory period because time has been substituted for payment of fines or court costs which the defendant is unable to pay.
... a State may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine. A statute permitting a sentence of both imprisonment and fine cannot be parlayed into a longer term of imprisonment than is fixed by the statute since to do so would be to accomplish indirectly as to an indigent that which cannot be done directly.... [T]he Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status. Id., at 243-244, 90 S.Ct. at 2023.
This reasoning was applied to the case of State v. Williams, 288 So.2d 319 (La.1974), by the Louisiana Supreme Court. In that case the Court vacated the fines that defendant was sentenced to pay as well as a part of the sentence which was to be served in parish prison in default of payment of the fines. The Court noted the defendant's indigency was satisfactorily established by his representation by counsel appointed from the Indigent Defender Program.
For the foregoing reasons, this case is remanded to the trial court for resentencing. In all other respects this case is affirmed.
REMANDED IN PART, AFFIRMED IN PART.
LANIER, Judge, concurring in part.
La.C.Cr.P. art. 884 provides that if a sentence imposed includes a fine and/or costs of prosecution (La.C.Cr.P. art. 887), the sentence shall provide that in default of payment of the fine and/or costs, the defendant shall be imprisoned for an additional specified period. The purpose of this law is to provide the State with a method of enforcing collection. See Official Revision Comment (a) under La.C.Cr.P. art. 884. The Supreme Courts of the United States and of Louisiana have held that such a statute cannot be utilized to imprison an indigent person beyond the maximum duration fixed by statute. Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); State v. Williams, 288 So.2d 319 (La.1974). The Courts have not held that an indigent cannot be fined or cast for costs. If an indigent fails to pay a fine or costs "... collection may be enforced in the same manner as a money judgment in a civil case." La.C.Cr.P. art. 886.
NOTES
[1] There were many assignments of error in the trial court; however, we need consider only those briefed. State v. Vanderhoff, 415 So.2d 190 (La.1982).
[2] The friends, Jay Turner and Mark Fernandez, were also arrested, and Fernandez testified for the State at Hernandez's trial.