LeBLANC, Judge.
Defendant, Mark A. Williams, was indicted by the East Baton Rouge Parish Grand Jury for second degree murder, in violation of La.R.S. 14:30.1. He initially pleaded not guilty to the charged offense and filed several pre-trial motions, including a motion to suppress a taped confession. The motion to suppress was heard on August 10, and denied on August 11,1987. When the matter came up for trial on August 25, 1987, defendant expressed a desire to withdraw his former plea of not guilty and enter a plea of guilty to the legislatively responsive offense of manslaughter, conditioned upon a reservation of the right to appeal the denial of the motion to suppress.
Defendant was properly Boykinized and his plea of guilty to the offense of manslaughter was accepted. The trial court agreed to a fifteen-year ceiling on the term of imprisonment and ordered a presentence investigation. Defendant was subsequently sentenced to a fifteen-year term of imprisonment at hard labor. This appeal followed. Defendant has assigned two errors for our review:
1. The trial court erroneously denied defendant’s motion to suppress his taped confession.
2. The trial court failed to follow the La.C.Cr.P. art. 894.1 guidelines and erroneously imposed an excessive sentence.
FACTS
The fáetual background of this case appears in the preliminary investigation reports and the transcript of the hearing on the motion to suppress.
On the evening of December 12, 1986, Shawn Milano, a twenty-year-old white male, was found dead outside his North Foster Drive apartment. The apartment was located behind his family’s place of business. The victim had been stabbed three times: once in the lower left abdomen; once in the lower left area of his back; and once, fatally, in the chest, directly piercing the heart and lung.
On January 13, 1987, while defendant was incarcerated on unrelated misdemean- or theft charges in the Parish Prison, he made an inculpatory statement to another prisoner in reference to this offense. Subsequently, on February 6, 1987, Detective Michael Vaughn picked up defendant at the Parish Prison in order to transport him to the Detective Interrogation Office.
Detective Vaughn testified that, en route to his office, he issued the Miranda warnings to defendant. He stated that, after arriving at the office, he read a standardized rights form to defendant. Thereafter, defendant was questioned regarding his understanding of each individual right and defendant indicated he understood each right. Detective Bill Brogan, also present in the interrogation room, corroborated Detective Vaughn’s testimony. He explained that as defendant indicated he understood each of the rights listed on the form, a check mark was placed next to it and all rights were checked off prior to interrogation.
Defendant denied having been advised of his rights en route to the Detective Interrogation Office. In addition, he testified that, while he was in the detective’s office, one of the detectives threw the rights form at him and ordered him to sign it. Defendant stated that, although he read the rights form and understood the words he read, he was unaware of his right to assistance of counsel and unaware that he was under investigation for commission of the crime of second degree murder. Defendant stated that Detective Brogan was seven feet tall, had swollen knuckles and blood on his shirt, and had a threatening manner. Defendant testified that he was under the impression that he would receive a severe beating unless he confessed to the crime. Additionally, he stated that the detectives threatened to arrest his wife, charge him with the commission of all the other murders in the area which were currently under investigation, and arrange for him to receive the maximum penalty on each of three pending charges. Defendant claimed that Detective Brogan pushed him around and that he beat his fists on the table ominously. Defendant stated that initially he denied any knowledge of or involvement *614 in the crime but fear overtook him, so he confessed.
Detectives Brogan and Vaughn contradicted defendant’s version of the interrogation. Detective Vaughn stated that he informed defendant he would prosecute family members as accessories if they willfully concealed information in order to impede investigation of the crime. Both detectives denied using any force, threats, or intimidation against defendant to compel his statement. They testified that, during general conversation, defendant spontaneously began to confess. They denied cueing defendant by suggesting answers to the questions they themselves posed, and they stated that defendant appeared to be well aware of his actions and words.
The trial court ruled that, after a consideration of the taped confession[1] and the testimony at the hearing on the motion to suppress, he was convinced that the rights form was completed prior to the first interrogation; that the officers did not use threats, promises, or undue influence against defendant in order to compel an inculpatory statement; and that defendant spontaneously began to confess, as reflected on tape number one. The trial-court stated that tape number two reflected that defendant was given the rights form he had previously signed and was asked if he had any questions regarding the form. Consequently, the trial court denied the motion to suppress the taped confession.
REVIEW OF THE RULING ON THE MOTION TO SUPPRESS
In brief, defendant claims that the state failed to prove the admissibility of the purported confession pursuant to La.C.Cr.P. art. 703. Defendant contends that the purported confession was not free and voluntary because it was made under the influence of fear, duress and threats. He states that in listening to the taped confession it is obvious that the purported confession consisted of yes and no responses to statements made by the detectives and that defendant did not have any independent knowledge of the facts of the crime. Defendant claims that he did not admit to having stabbed the victim in the chest and that the evidence showed the victim died as a result of a stab wound in the chest.
During the hearing on the motion to suppress, defense counsel stated that the taped confession should be included or admitted into evidence; and, at one point, he began to offer the taped confession into evidence. However, the tape (or tapes) of the confession, or a transcription thereof, was not formally introduced into evidence. Nonetheless, the record is clear that the trial court listened to the tapes and was thereby aided in its ruling on the motion to suppress.
It is well settled that for a confession to be admissible into evidence, the state must affirmatively prove that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, or promises. State v. Odds, 448 So.2d 868, 870 (La.App. 1st Cir.1984), writ denied, 477 So.2d 701 (La.1985). The trial court’s determination that the state has met its burden of proof with regard to the confession’s voluntariness is entitled to great weight. Further, the determination of a witness’s credibility, being a function of the trier of fact, is entitled to great weight. State v. Hernandez, 432 So.2d 350, 353 (La.App. 1st Cir.1983).
However due to the fact that the taped confession (considered by the trial court in arriving at its ruling on the motion to sup *615 press) is not of record, we are unable to determine whether or not the trial court erred in denying the motion to suppress the taped confession. We are not authorized to receive evidence outside of the appellate record. State v. Smith, 447 So.2d 565 (La.App. 1st Cir.1984). Only that which is in the appellate record may be reviewed on appeal.
It would be a futile exercise to affirm the ruling of the trial court and require defendant to proceed via application for post-conviction relief under the particular circumstances of this case. A simple remand for a reopened hearing on the motion to suppress will suffice. We believe that, in the interest of justice and judicial economy, this defendant should not suffer an undue burden and delay on post-conviction procedures due to defense counsel’s technical error in failing to formally introduce the taped confession into evidence. Cf. State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983). Accordingly, we remand this case for the sole purpose of completion of the record.
We retain jurisdiction over this appeal with the following directions:
The trial court is ordered to reopen the hearing on the motion to suppress and allow defense counsel to introduce into evidence the tapes of defendant’s confession which were provided to the trial court for consideration at the hearing on the motion to suppress on August 10, 1987. The trial court is then ordered to have this appellate record (consisting of the exhibits and appropriate minute entry) supplemented within ten days of the conclusion of the reopened hearing on the motion to suppress so that this Court may complete its review of the issues under the assignments of error previously made. If the state and/or defendant wish to submit a supplemental brief to this Court, they must do so within ten days of the conclusion of the reopened hearing.
REMANDED WITH ORDER.

. The record is not clear, but it appears that there were two tapes; each containing a confession by defendant. Tape number two was apparently made sometime after tape number one, although made on the same date as tape number one. The detectives testified that tape number one was made when defendant began to confess spontaneously and that they did not have an opportunity to tape the advice of rights. Therefore, they claim to have started another tape, tape number two, so that at the outset they could indicate that defendant had been properly advised of his rights prior to confessing. Defense counsel had one tape, which contained a recording of tape numbers one and two. The state had the original tapes. The trial court stated that it listened to two tapes and, therefore, we infer that the state provided the trial court with the original tapes.