536 So.2d 589 (1988)
STATE of Louisiana
v.
Robert KNIGHT.
No. 88 KA 0398
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
On Rehearing January 10, 1989.
*590 William R. Campbell, Jr., New Orleans, for plaintiff-appellee State of La.
Public Defenders Office, Covington, for defendant-appellant Robert Knight.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
Defendant, Robert Knight, was charged by a grand jury indictment with the second degree murder of Billy Ray Delancey, a violation of LSA-R.S. 14:30.1. Defendant subsequently withdrew his original plea of not guilty to the charged offense and entered a plea of guilty to a reduced charge of manslaughter, a violation of LSA-R.S. 14:31, reserving his right to appeal the trial court's denial of his motion to suppress his confession. See State v. Crosby, 338 So.2d 584 (La.1976). Subsequently, the trial court sentenced defendant to imprisonment *591 at hard labor for a term of fifteen years, to run concurrently with sentences of eight years at hard labor imposed for each of three felony convictions not related to the instant conviction. Through his appeal of the instant conviction, defendant urged two assignments of error:
1. The trial court erred by denying defendant's motion to suppress his confession.
2. Because of error patent, defendant's conviction and/or sentence should be reversed.
The record reflects that the instant offense occurred in Washington Parish at approximately 4:00-4:30 a.m. on September 5, 1986. The victim's body was discovered the following day inside a three-sided structure in which the victim apparently lived.
Defendant confessed that he entered the structure not knowing that anyone lived there. Defendant pushed the victim down to rob him. The victim arose, kicked defendant, and began swinging a baseball bat at defendant. Defendant grabbed the bat and took it away from the victim. Defendant then used the bat to strike the victim, hitting him twice. The first blow struck the victim's head. After the victim fell, the defendant patted down the victim and during the process, located about eighty dollars inside one of the pockets of the victim's clothing. Defendant took the money and the baseball bat and left.
ASSIGNMENT OF ERROR NUMBER ONE:
By means of this assignment, defendant contends that the trial court erred by denying his motion to suppress his confessions. Defendant makes two arguments in support of his contention. First, he claims that his confessions were the products of promises made to him to have him transferred from the Washington Parish Prison in Franklinton to the jail in Bogalusa. Second, defendant asserts that, because he was represented by counsel when he confessed and, presumably, because the police initiated questioning of defendant after defendant invoked his right to counsel, the confessions were obtained in violation of defendant's right to counsel.
At the June 15, 1987, hearing on defendant's motion to suppress his confessions, the state presented the testimony of Officers Glynn McClendon and Mike Edwards of the Bogalusa City Police Department. However, the record reveals that defendant failed to introduce any evidence on his own behalf at the hearing.
The record reflects that defendant made tape-recorded confessions to the instant offense on February 6, 1987, and March 14, 1987, and that, on March 18, 1987, defendant made an inculpatory statement relating to the location of the baseball bat (which had been used to strike the victim).
McClendon testified that he became involved in the investigation of the Delancey homicide on February 6, 1987. McClendon stated that he received a telephone call from Captain Ernie Wells at about 2:00 a.m. on February 6. Wells told McClendon defendant was in his office and wanted to talk to them in regard to the homicide. Wells informed McClendon that defendant had been at the hospital in Bogalusa with Washington Parish Deputy Sheriff Creed Rodgers and that defendant had told Rodgers that he wanted to come to the Bogalusa Police Department to talk with the Bogalusa police. As a consequence, defendant was brought to Wells' office. After talking to McClendon, Wells brought defendant to the Bogalusa detectives' office, where defendant made his initial confession in the presence of McClendon, Wells, and Assistant Chief Robert Crowe.
McClendon testified that on February 6 he first advised defendant of his Miranda rights as those rights appear on state exhibit-1, a waiver of constitutional rights and consent to questioning form. McClendon stated that he handed the form to defendant, that defendant appeared to read the form, and that defendant signed the form. After executing the form, defendant made his initial confession. McClendon testified that, from the time he first came into contact with defendant on February 6, he neither had knowledge of nor did defendant tell him of any threat, coercion, abuse, or promise which had been used to obtain defendant's confession.
*592 In regard to a second tape-recorded confession which defendant made to McClendon on March 14, 1987, at the Washington Parish Prison, McClendon testified that he again advised defendant of his constitutional rights as reflected on the tape-recording. McClendon stated that the confession occurred in his presence alone and that defendant was not threatened, coerced or promised anything to get defendant to make the confession.
According to McClendon, he spoke to defendant a third time on March 18, 1987, in the presence of Assistant Chief Crowe. Again, defendant was advised of his constitutional rights, and defendant executed another waiver of constitutional rights and consent to questioning form (state exhibit-3). On this occasion, the only subject discussed was the location of the baseball bat used to kill Delancey. Contradicting an earlier statement, defendant told the officers that the bat could be found at his mother's residence in Franklinton. McClendon denied that anyone threatened, abused, coerced or promised defendant anything to obtain the statement and that defendant did not tell him anyone had done any of the foregoing.
McClendon testified that defendant's initial confession was made at the urging of defendant and not the police. In regard to defendant's second confession, a friend of defendant notified McClendon that defendant wanted to talk to someone. Thereafter, he and Crowe went to the Washington Parish Prison on March 18 to talk to defendant in accordance with defendant's prior comment that he would talk to them at a later date about the location of the baseball bat.
McClendon testified that he was aware (prior to defendant's confession) that defendant was incarcerated at the parish prison on the basis of charges unrelated to the instant offense, but he denied that he knew, at that time, defendant was represented by a court appointed counsel. In any event, McClendon testified emphatically that at no time, before or while defendant was making his confessions and the March 18 statement, did defendant request an attorney.
In reference to defendant's allegation that his confessions were the products of promises made to have him transferred from the parish prison to the jail in Bogalusa, McClendon testified that, after defendant's February 6 and March 14 confessions, defendant told him he was being harassed in the parish prison. McClendon stated that at that time he told defendant he "could probably have [defendant] moved" from the parish prison, but he did not do so "for anything" or to obtain defendant's statements. McClendon acknowledged that defendant was transferred to the jail in Bogalusa on the day defendant made his second confession (March 14), but he emphatically denied that he ever promised that defendant would be transferred if he made a statement or that the transfer was made pursuant to any promise. Additionally, McClendon denied that he made any promises in regard to "helping the situation" inside the parish prison or that he had helped to get defendant "moved to the front."
Officer Mike Edwards testified that he was present when defendant made the March 18 statement concerning the location of the baseball bat. Edwards denied that he threatened defendant, promised defendant anything or did anything to induce the statement.
Edwards testified that, on January 7, 1987, he became aware defendant was having problems in the parish prison and that defendant wanted to be moved to the jail in Bogalusa. However, Edwards denied that he at any time promised to "see about" a transfer of defendant to the jail in Bogalusa in return for a statement.

ALLEGED VIOLATION OF RIGHT TO COUNSEL
The statements of an accused, whether exculpatory or inculpatory, when made during a custodial interrogation should be suppressed unless the accused is first advised of, and subsequently waives, his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. *593 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). LSA-Const. Art. 1, § 13. When an accused asserts his right to counsel, the police must scrupulously honor the invocation of the right, and interrogation must cease. State v. Harper, 430 So.2d 627 (La.1983); State v. Campbell, 461 So.2d 644 (La.App. 1st Cir.1984), writ denied, 466 So.2d 1299 (La. 1985).
In Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Supreme Court stated the following:
An accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for the assistance of counsel. Edwards v. Arizona, 451 U.S. [477] at 484-485, 101 S.Ct., [1880] at 1885, [68 L.Ed.2d 378 (1981).] This "rigid" prophylactic rule, Fare v. Michael C., 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979), embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. See, e.g., Edwards v. Arizona, supra, 451 U.S., at 484-485, 101 S.Ct., at 1884-1885 (whether accused "expressed his desire" for, or "clearly asserted" his right to, the assistance of counsel); Miranda v. Arizona, 384 U.S., at 444-445, 86 S.Ct., at 1612 (whether accused "indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking"). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. Edwards v. Arizona, supra, 451 U.S., at 485, 486, n. 9, 101 S.Ct., at 1885, n. 9. (footnote omitted) [105 S.Ct. at 492-493].
Initially, we note that the tenor of defendant's argument in brief implies that the appointment of counsel to represent an accused, in and of itself, acts as a bar to any subsequent police interrogation of the accused. We disagree with that implication. In Patterson v. Illinois, ___ U.S. ____, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the United States Supreme Court flatly rejected a similar claim by the defendant that the attachment of his Sixth Amendment right to counsel (upon his indictment) barred his post-indictment interrogation by the police. In rejecting the defendant's claim, the court noted that the defendant had at no time sought to have counsel present during interrogation. The court went on to state the following:
Preserving the integrity of an accused's choice to communicate with police only through counsel is the essence of Edwards and its progenynot barring an accused from making an initial election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone. If an accused "knowingly and intelligently" pursues the latter course, we see no reason why the uncounseled statements he then makes must be excluded at his trial. [108 S.Ct. at 2394].
Herein, the evidence presented by the state clearly established that at no time did defendant invoke his constitutional right to counsel and that, prior to each of defendant's confessions and prior to defendant's March 18 statement, defendant knowingly and intelligently waived his right to counsel. Hence, the Edwards rule did not bar the police interrogations which followed those waivers regardless of whether the interrogations were initiated by the police or defendant.

ALLEGED PROMISE(S)
It is well settled that for a confession or inculpatory statement to be admissible into evidence, the state must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, or promises. LSA-R. S. 15:451; State v. Whitaker, 489 So.2d 998 (La.App. 1st Cir.1986), writ denied, 494 So.2d 324 (La.1986). The trial court's determination that the state has met its burden of proof with regard to voluntariness is *594 entitled to great weight. State v. Whitaker, supra.
In the instant case, the testimony of Officers McClendon and Edwards completely refuted defendant's allegation of any promise(s) by the police to transfer or assist in any transfer of defendant from parish prison to jail in Bogalusa in exchange for a confession or statement. Furthermore, McClendon's testimony revealed that he made no promise(s) to render help of any kind to defendant in regard to any problems defendant might have been experiencing during his incarceration at the parish prison in exchange for a confession or statement. Accordingly, we find that the state met its burden of proving the voluntariness of defendant's confessions and the March 18 statement. Hence, the trial court properly denied the motion to suppress.
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO:
By this assignment, defendant requests a review of this record for patent error. This court always inspects the record for errors patent; no request by defendant is necessary.
In criminal cases, an appellate court may only consider errors designated in an assignment of error and errors "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." LSA-C.Cr.P. art. 920. For purposes of a patent error check, the record includes the caption, the statement of time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the mentioning of the impaneling of the jury, the verdict, the judgment of sentence, the bill of particulars filed in connection with a short form indictment or information, and, in a capital case, a minute entry indicating that the jury had been sequestered. State v. Grant, 486 So.2d 901 (La.App. 1st Cir.1986).
After a careful review of the record, we find no patent errors.
CONVICTION AND SENTENCE AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In defendant's application for rehearing, he cites Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) as controlling in the instant case. We disagree.
In Michigan v. Jackson, the accuseds (in separate cases) had each been formally charged with a crime; and they requested, during their arraignments, that the judge appoint counsel for them. The Michigan Supreme Court concluded that the Edwards rule was applicable and ruled that the accuseds' post-arraignment confessions were improperly obtained and their Sixth Amendment rights were violated because the accuseds had requested counsel during their arraignments but had not been afforded an opportunity to consult with counsel before the police initiated further interrogations. On appeal to the United States Supreme Court, the court affirmed the Michigan Supreme Court's ruling and held as follows: "[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 106 S.Ct. at 1411. The basis for the Michigan v. Jackson holding was the Sixth Amendment guarantee of the assistance of counsel; but the United States Supreme Court made clear that the Michigan Supreme Court had correctly perceived that the reasoning of the Edwards decision was applicable with even greater force to the accuseds in Michigan v. Jackson, notwithstanding that Edwards rested on the Fifth Amendment protection against self-incrimination.
In the instant case, there was no evidence that defendant had at any time asserted his right to counsel at an arraignment or similar proceeding. Hence, the Edwards rule did not apply in this case. Moreover, even if we assume, arguendo, that there was evidence that defendant had asserted his right to counsel under a scenario similar to that in Michigan v. Jackson *595 to trigger the applicability of the Edwards rule, the testimony of Officer Glynn McClendon clearly established that each of the instances of custodial interrogation which produced defendant's statements to the police were initiated by defendant rather than the police.