653 So.2d 1288 (1995)
STATE of Louisiana
v.
Al Patrick GLYNN, Jr.
No. 94 KA 0332.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
*1293 Stephen P. Callahan, Houma, for appellee State of La.
Jerri Smitko, Houma, for defendant-appellant Al Patrick Glynn, Jr.
Before LEBLANC, PITCHER and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
The defendant, Al Patrick Glynn, Jr., was charged by grand jury indictment with aggravated rape, in violation of LSA-R.S. 14:42 A(3). He pled not guilty and, after a jury trial, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[1] He has appealed, *1294 alleging twenty-four assignments of error,[2] as follows:
1. The trial court erred in failing to require the prosecutor to state a racially neutral reason for exercising a peremptory challenge on a prospective juror.
2. The trial court erred in failing to grant the defendant's challenge for cause.
3. The trial court erred in allowing Detective Marcel Null to testify as to matters of which he had no personal knowledge.
4. The trial court erred in allowing several items to be introduced into evidence without a proper chain of custody.
5. The trial court erred in allowing the admission into evidence of photographs which were more prejudicial than probative.
6. The trial court erred in allowing evidence to be admitted in violation of LSA-R.S. 15:436.1.
7. The trial court erred in allowing photographs to be introduced into evidence without a proper foundation.
8. The trial court erred in denying the defendant's motion for a mistrial based on statements by a sheriff's deputy containing references to other crimes.
9. The trial court erred in denying the defendant's motion to suppress the confession.
10. The trial court erred in determining that the defendant's confession to Kurt Brauns was free and voluntary.
11. The trial court erred in allowing hearsay testimony by Lieutenant Euie Usie to be introduced into evidence.
12. The trial court erred in allowing State Exhibits 17 through 20 to be introduced into evidence.
13. The trial court erred in allowing hearsay testimony by Kurt Brauns to be introduced into evidence.
14. The trial court erred in denying the defendant's motion for a mistrial based on statements made by Mr. Brauns containing references to other crimes.
15. "The Trial Court erred in constantly using a derogatory tone with defendant's counsel during trial, thus prejudicing defendant's right to a fair trial."
16. The trial court erred in refusing to allow defense counsel to question Kurt Brauns regarding other charges filed against him.
17. The trial court erred in denying the defendant's motion for a mistrial based on the publication of newspaper accounts during the course of the trial.
18. The trial court erred in denying the defendant's motion for a mistrial based on the posting of docket sheets in the courthouse that detailed various charges against the defendant.
19. The trial court erred in refusing to allow defense counsel to object during closing argument.
20. The trial court erred in allowing the prosecutor to argue to the jury during closing argument that the defendant should have "proven himself innocent."
21. The trial court erred in charging the jury as to three potential aggravating circumstances when the indictment listed only one aggravating circumstance.
22. The trial court erred in allowing written evidence into the jury room.

*1295 23. The trial court erred in denying the defendant's motion for a new trial.
24. The trial court erred in denying the defendant's motion for a post-verdict judgment of acquittal.
Assignments of error numbers 1, 11, 19, and 22 were not briefed on appeal and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
During the early morning hours of June 22, 1992, the victim, a sixty-three year old widow, was alone at her home in Schriever, Louisiana, when she was awakened by a noise. She saw the defendant in her living room, standing behind a chair. The victim slept on a mattress on the living room floor because it was cooler than her bedroom, which had no air conditioner. The defendant came out from behind the chair and struck the victim on the head twice with a metal shower curtain rod. The defendant grabbed the victim, removed her nightgown and panties, and raped her. At some point, the defendant told the victim that defendant had picked up the victim's gun, which she kept beside the mattress.
After the rape, the defendant took two televisions and a videocassette player and placed them on the backseat of the victim's vehicle. While armed with the victim's gun, the defendant forced the victim to accompany him in her car. The defendant first drove to a housing project in Thibodaux. He then proceeded down a gravel road and finally released the victim in a cane field in an area that the victim referred to as Devil Swamp. The victim walked to a nearby house and asked the owner to call the police.
A subsequent investigation soon focused upon the defendant. The defendant lived across the street from the victim; she had no trouble identifying him as the perpetrator. The defendant gave two separate confessions in which he admitted raping the victim. He first confessed to Detective Lynn Lirette of the Terrebonne Parish Sheriff's Office. This confession led to the eventual recovery of the victim's videocassette player and one television. The other television and the gun were never recovered. Several months later, the defendant also confessed to a fellow inmate, Kurt Brauns.
ASSIGNMENT OF ERROR NO. TWO:
In this assignment of error, the defendant contends that the trial court erred in denying his challenge for cause of prospective juror David Barnett.
Initially, we note that the record shows that the defendant exhausted his peremptory challenges. However, even if the defendant had not exhausted his peremptory challenges, he would not have been precluded from complaining of the trial court's ruling refusing to sustain his challenge for cause. See State v. Burge, 498 So.2d 196, 203 (La. App. 1st Cir.1986) (wherein we noted that Act 181, § 1, of 1983 amended LSA-C.Cr.P. art. 800 to remove the requirement that a defendant exhaust all his peremptory challenges before he can complain of a ruling denying a challenge for cause).
La.C.Cr.P. art. 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:

* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;....
(4) The juror will not accept the law as given to him by the court;....
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law may *1296 be reasonably inferred. State v. Thompson, 489 So.2d 1364, 1370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). However, the trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Dufrene, 461 So.2d 1263, 1266 (La.App. 1st Cir.1984).
During voir dire examination, the following colloquy occurred between the prosecutor and Mr. Barnett:
Q Mr. Barnett, you raised your hand earlier. You thought you'd have a problem listening to that type of evidence?
A My brother-in-law sexually abused my niece for years and years. He was in prison for only three years.
Q And do you feel like that experience, because of the nature of thatcircumstances of those crimes that were committed, that that would in some way prevent you from being impartial in this case?
A Not knowing the individual, I don't think it would bother me.
Q In other words, Mr. Glynn had nothing to do with that particular offense, correct?
A That's correct.
Q And you have, I'm assuming, some great deal of animosity towards your brother-in-law for what he did.
A Yes, sir[.]
Q And a great deal of sympathy for your niece.
A Yes.
Q But you understand that has nothing to do with Mr. Glynn or with the facts of this particular case.
A I do. sir. (sic)
Q So you can set that aside and still listen to the evidence although it might make it a little bit more difficult for you to hear, you can still do that, right?
A Yes, sir. I think.
Q Okay. Thank you.
Thereafter, defense counsel questioned Mr. Barnett as follows:
Q Mr. Barnett, because of the unfortunate occurrence with your nieces, niece, you may have some ideas or preconceived notions about the system of justice. You feel that you do, okay. Would you feel that that would influence you in this case?
A It does turn emotions. But I can put emotions aside to try to do what's right.
Q I need to know if you can be able to I'm not comfortable yet, Mr. Barnett. Can you say, can you say that was another dealall right, let me ask you this. Do you feel like your brother-in-law, your ex brother-in-law, whatever, do you feel justice was done with the time he got?
A No, ma'am.
Q Because I think you indicated you said he only got three years.
A Yes, ma'am.
Q So, Ithere's some anger there about that.
A Yes, ma'am.
Q What I need to know is if you have something to prove in this case?
A No, I have no animosity towards this man.
Q That's what I need to know, Mr. Barnett. So, you're telling me you can be fair and impartial and put that, as hard as it may be, as difficult a task that may be, put that out of your mind for the purposes of judging this case?
A Yes, ma'am.
Q Thank you, Mr. Barnett.
When defense counsel requested a challenge for cause, the following colloquy occurred:
*1297 DEFENSE COUNSEL:
Your Honor, I would also challenge Mr. David Barnett for cause because he apparently has severe, or I would say strong feelings about the criminal justice system from the comments that he made, and therefore I don't, I was not convinced, Your Honor, even though I attempted to rehabilitate him, that he could sit fairly and impartially.

PROSECUTOR:
Your Honor, I think Mr. Barnett said he could in fact be impartial. He said that he's not happy about the situation involving his niece apparently somewhere in Texas, but he also said that he could be impartial. I think
THE COURT:
What I got out of the sense of his testimony was, that he could be, that it'd be difficult for him but he could do it. He's intelligent enough, I think, to be able to do it if he says he will. I'll deny that challenge for cause.
In his brief to this court, the defendant contends that Mr. Barnett had "deep resentment towards sex crime offenders. His answers... verify his preconceived bias...." We disagree. Contrary to the defendant's argument, a review of Mr. Barnett's responses indicated that he would not be affected by the incident involving his niece and that he could be fair and impartial. In fact, he specifically stated that he had "no animosity towards" the defendant. Accordingly, we find no abuse of discretion by the trial court in denying the defendant's challenge for cause of Mr. Barnett.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NOS. THREE AND FOUR:
These assignments of error relate to the introduction of the state's physical evidence. In assignment of error number three, the defendant contends that the trial court erred "in allowing Detective Null to testify as to matters ... of which he had no personal knowledge." In assignment of error number four, the defendant contends that the state failed to establish a proper chain of custody for the evidence.
To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Pittman, 486 So.2d 895, 896 (La.App. 1st Cir. 1986). A sufficient foundation for the introduction of demonstrative evidence, is laid if the evidence establishes that it is more probable than not that the object is the one connected to the case. State v. Serigny, 481 So.2d 659, 663 (La.App. 1st Cir.1985), writ denied, 484 So.2d 667 (La.1986). Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Spooner, 550 So.2d 1289, 1304 (La.App. 1st Cir.1989), writ denied, 566 So.2d 394 (La.1990).
At the trial, Marcel Joseph Null testified that he was the evidence officer for the Terrebonne Parish Sheriff's Office (TPSO). He was in charge of the evidence room in the basement of the courthouse. Detective Null explained that some items of evidence were returned to the owners, others were sent to the State Police Crime Laboratory, and several items were released to D.L. Mosely, an investigator with the Terrebonne Parish District Attorney's Office.
Both Det. Null and Investigator Mosely testified concerning those items of evidence for which they were responsible. Contrary to the defendant's argument, their testimony provided an adequate chain of custody sufficient to establish a proper foundation for introducing all of the state's evidence. Furthermore, except for State Exhibits 11 and 12, which were identified by Dr. Sherif Sakla, *1298 the emergency room physician who examined the victim after the rape, every other piece of evidence introduced by the state was identified by the victim or a current or former member of law enforcement.
These assignments of error are meritless.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, the defendant contends that the trial court erred in allowing photographs of the victim (State Exhibits 6-12) to be admitted into evidence over his objections. Specifically, the defendant contends that the photographs were not relevant. In the alternative, he argues that their prejudicial effect outweighed their probative value.
La.Code of Evidence art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.Code of Evidence art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible, provided their probative value outweighs any prejudicial effect. State v. Burge, 486 So.2d 855, 863 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986).
State Exhibits 6-12 depict bruises on the victim's face, arm, hand, and thigh. The defendant's argument that these photographs of the victim's injuries are irrelevant is simply frivolous. Furthermore, we find that the probative value of this evidence far outweighed its prejudicial effect. The victim's injuries, as depicted by these photographs, are not so serious as to characterize this evidence as gruesome. Accordingly, we find that the trial court correctly allowed this evidence to be admitted over the defendant's objections.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SIX:
In this assignment of error, the defendant contends that the trial court erred in allowing a photograph to be introduced into evidence over his objection. The photograph allegedly depicted items taken from the victim's residence by the defendant and was taken shortly before the items were returned to the victim.
In his brief to this court, the defendant contends that the state did not comply with the provisions of LSA-R.S. 15:436.1 governing the admissibility of photographs, affidavits of value and ownership, and notice to the defendant. Therefore, the photograph of the items returned to the victim was inadmissible. Specifically, he refers to the provisions requiring an affidavit and pretrial notice.
The defendant identifies State Exhibit 11 as the photograph allegedly depicting the stolen items which were returned to the victim. However, State Exhibit 11 depicts bruises on the victim's thigh. While the prosecutor specifically questioned the victim about items taken from her residence by the defendant, and he apparently showed the victim at least one photograph of such items which prompted defense counsel to object based on a lack of compliance with LSA-R.S. 15:436.1, it is obvious from our examination of the items introduced into evidence at the trial that a photograph allegedly depicting items taken from the victim's residence and subsequently returned to the victim was never introduced into evidence at the trial. Since no such photograph was introduced into evidence, compliance with LSA-R.S. 15:436.1 is not at issue herein.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. SEVEN:
In this assignment of error, the defendant contends that the trial court erred in allowing *1299 State Exhibits 6-12 to be admitted without a proper foundation. Specifically, he claims that "no one knows who took those photographs or when they were taken."
La.Code of Evidence art. 901 A provides:
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
A proper foundation for admission into evidence of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it. It is well settled that the photograph need not be identified by the person who took it to be admissible into evidence. State v. Robertson, 454 So.2d 205, 210 (La.App. 1st Cir.), writ denied, 458 So.2d 487 (La.1984).
Linda Lirette testified that, at the time of the instant offense, she was employed by the TPSO as an evidence custodian and crime scene investigator. She specifically stated that she took all of the photographs in the case except for the photographs of the victim's vehicle. These photographs were taken by Detective Marc Tabor at the TPSO motor pool. Furthermore, the victim identified State Exhibits 6-10, and Dr. Sakla identified State Exhibits 11 and 12.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NOS. EIGHT AND FOURTEEN:
In these assignments of error, the defendant contends that he was entitled to a mistrial on two separate occasions wherein state witnesses improperly referred to inadmissible other crimes evidence. Assignment of error number eight refers to a statement by TPSO Deputy George Picone. During the prosecutor's direct examination of Deputy Picone, the following colloquy occurred:
Q What area were you originally dispatched to, Deputy Picone?
A I was dispatched to Lafourche Detention Center in reference to a complaint of was (sic) a burglary and a kidnapping I believe, and it's at the
DEFENSE COUNSEL:
Objection, Your Honor. May we approach the bench?
THE COURT:
Yes, ma'am. (Bench conference)
DEFENSE COUNSEL:
Your Honor, I'd ask for a mistrial based upon the deputy's statements.
Assignment of error number fourteen refers to a statement by Kurt Brauns. While relating the defendant's confession, the following colloquy occurred:
Q Why don't you tell the jury, if you will, and us, Mr. Brauns, what it is he told you happened that night.
A Well, he told me that he was riding around early in the morning and he was wanting to figure out a way where he could buy some crack because he was addicted on crack at that time. So he told me
DEFENSE COUNSEL:
I'm going to object, Your Honor. May we approach the bench?
THE COURT:
Yes, ma'am.
DEFENSE COUNSEL:
Ask that my objection be noted for the record.
THE COURT:
Yes, ma'am. Objection is noted. Overruled.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes *1300 evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lafleur, 398 So.2d 1074, 1080 (La.1981).
Prior to its amendment by Acts 1994, 3rd Ex.Sess., No. 51, Sec. 1, La.Code of Evidence art. 404 B(1) provided:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
La.C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;...
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Initially, we note that Deputy Picone's statement was not a direct reference to crimes committed or allegedly committed by the defendant. He simply stated that he was dispatched to investigate a complaint of a burglary and a kidnapping. He did not mention a suspect. In any event, even if the statement could be considered to be a reference to crimes allegedly committed by the defendant, under the circumstances of this particular case we conclude that any such error was harmless beyond a reasonable doubt. The testimony of the victim established that the defendant committed several offenses. Besides the offense of aggravated rape for which he was convicted herein, there was testimony that the defendant also committed acts of aggravated burglary, aggravated battery, armed robbery, and aggravated kidnapping. Because the defendant committed all of these acts against the victim during a single criminal episode, evidence regarding all of these acts was admissible. As a part of the res gestae, i.e., it related to conduct that constituted an integral part of the act or transaction that is the subject of the present proceeding. See La.C.E. art. 404 B(1). Since the jury had already heard the victim's testimony detailing the other offenses committed by the defendant, we find that Deputy Picone's statement was harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt. See La.C.Cr.P. art. 921; State v. Trosclair, 584 So.2d 270, 277-279 (La.App. 1st Cir.), writ denied, 585 So.2d 575 (La.1991).
Concerning the statement by Kurt Brauns, we note that the defendant requested neither a mistrial nor an admonition. In his brief to this court, the defendant states that he requested a mistrial during the bench conference. However, only that which is in the record may be reviewed. See La.C.Cr.P. art. 914.1; State v. Vampran, 491 So.2d 1356, 1364 (La.App. 1st Cir.), writ denied, 496 So.2d 347 (La.1986). The defendant concedes that the record reflects only an objection to the statement.
Furthermore, the state provided open file discovery in this case. We can conclude only that the defense knew the contents of the confession to Kurt Brauns. Neither at the trial nor in his brief to this court has the defendant indicated that Mr. Brauns' statement regarding crack cocaine addiction was a surprise.
LSA-R.S. 15:450 provides:

*1301 Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
However, when a confession or an inculpatory statement contains inadmissible references to other crimes, a jurisprudential exception to LSA-R.S. 15:450 allows a defendant, if he so elects, to excise those references to other crimes before the confession or statement is admitted into evidence. See State v. Kent, 489 So.2d 1354, 1359-1360 (La.App. 1st Cir.1986). In the instant case, the defendant did not request that the court instruct Mr. Brauns to omit this reference to crack cocaine addiction. Accordingly, the state was obligated to elicit from Mr. Brauns the defendant's confession in its entirety. See State v. Morris, 429 So.2d 111, 121 (La. 1983).
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. NINE:
In this assignment of error, the defendant contends that the trial court erred in denying his motion to suppress. Specifically, he contends that the trial court erred in failing to suppress his oral confession to TPSO Detective Lynn Lirette. In support of this assertion that his confession was involuntary, the defendant makes four separate arguments: (1) irregularities in the Waiver of Rights Form; (2) the failure to have the Waiver of Rights Form witnessed; (3) Det. Lirette's explicit promise to the defendant made in exchange for the confession; and (4) Det. Lirette's failure to inform the defendant of the charges pending against him.
It is well-settled that for a confession or inculpatory statement to be admissible into evidence, the state must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451. The state must specifically rebut a defendant's specific allegations of police misconduct in eliciting a confession. State v. Thomas, 461 So.2d 1253, 1256 (La.App. 1st Cir.1984), writ denied, 464 So.2d 1375 (La.1985). Additionally, the state must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. King, 563 So.2d 449, 453 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. See State v. Patterson, 572 So.2d 1144, 1150 (La.App. 1st Cir.1990), writ denied, 577 So.2d 11 (La.1991); State v. Sanford, 569 So.2d 147, 150 (La.App. 1st Cir.1990), writ denied, 623 So.2d 1299 (La.1993). Whether a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La.1983). The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La.App. 1st Cir.1983).
At the motion to suppress hearing, which was conducted during the trial but outside the presence of the jury,[3] the state presented the testimony of former Det. Lirette, who was no longer employed by the TPSO. The only evidence presented by the defense on the issue of the voluntariness of the defendant's confession was the Waiver of Rights Form, which was introduced into evidence as a joint exhibit (State Exhibit 13 and Defense Exhibit 1) and Det. Lirette's *1302 report, which was introduced into evidence as Defense Exhibit 2. At the conclusion of this hearing, the trial court ruled that the confession was freely given and, therefore, was admissible at the trial. For the reasons which follow, we find no abuse of discretion in the trial court's ruling.
The defendant first complains of "irregularities" in the Waiver of Rights Form and the failure of Det. Lirette to have the form witnessed. He specifically complains that the blank line appearing beside each individual Miranda right (a total of five blank lines) was not initialed and that Det. Lirette testified that he did not know the purpose of these blank lines. Additionally, the defendant complains that the Waiver of Rights Form was not witnessed; and he notes that another detective was asked to leave the room before the confession to Det. Lirette and, therefore, there were no witnesses to this confession. However, the defendant does not deny that he received his Miranda rights. It is not required that the police have either a signed rights waiver form or another officer to substantiate that such rights were given to the defendant. The state need only prove that the defendant was given the Miranda rights. State v. Whitaker, 489 So.2d 998, 1001 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986); State v. Odds, 448 So.2d 868, 870 (La.App. 1st Cir.1984), writ denied, 477 So.2d 701 (La.1985).
There are no instructions on the Waiver of Rights Form. The blank line appearing beside each individual right could be used for the defendant's initials, as the defendant contends. On the other hand, each blank line could simply be marked or checked off, or initialed by the officer administering the rights or even a witness. In any event, since the use of a rights waiver form is not mandated by the jurisprudence, these so-called "irregularities" in this form do not render the defendant's waiver of his Miranda rights invalid. Furthermore, as noted above, the presence of a witness is not mandated by the jurisprudence. Accordingly, these arguments are meritless.
The defendant next argues that his confession was involuntary because it was given in exchange for a promise by Det. Lirette. Det. Lirette testified that the defendant agreed to talk with him if he would get the defendant some help for his emotional and drug problems. Det. Lirette told the defendant that he would speak to someone at the coroner's office. The defendant cites State v. Faulkner, 447 So.2d 1139, 1143 (La. App. 1st Cir.), writ denied, 449 So.2d 1345 (La.), cert. denied, 469 U.S. 848, 105 S.Ct. 164, 83 L.Ed.2d 100 (1984), for the proposition that a confession obtained by any direct or implied promise, however slight, or by the exertion of any improper influence, is involuntary and inadmissible as a matter of constitutional law. However, in State v. Nathan, 444 So.2d 231, 234 (La.App. 1st Cir. 1983), writ denied, 445 So.2d 1232 (La.1984), this court found that a promise for help for the defendant's emotional problems was not a sufficient inducement to vitiate the voluntary nature of the defendant's inculpatory statement. Similarly, we find that Det. Lirette's promise to speak to someone at the coroner's office in regard to the defendant's request for help for his emotional and drug problems was not a sufficient inducement to vitiate the voluntariness of the defendant's confession. This argument has no merit.
Finally, the defendant contends that Det. Lirette never informed him of the charges pending against him prior to the interrogation. However, in its brief to this court, the state responds that the defendant confessed prior to his arrest, that he was informed of the reason for his "detention" by Det. Lirette, and that this procedure complied with La.C.Cr.P. art. 218.1.
La.C.Cr.P. art. 218.1 provides:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.
*1303 Det. Lirette testified that, at the time the defendant confessed, there were no charges pending against him. He also testified that the defendant was not arrested until after his confession. From the record before us, it is difficult to ascertain whether or not the defendant was "detained" for purposes of article 218.1. Det. Lirette testified that he asked the defendant to come to the sheriff's office and the defendant agreed. This testimony seemingly indicates that the defendant voluntarily accompanied the deputies to the sheriff's office. However, there is no clear indication from the record revealing whether or not the defendant was free to leave the sheriff's office at any point during the interrogation process prior to the actual confession. For instance, there is no testimony as to whether or not the defendant was placed in handcuffs. Det. Lirette specifically testified that his questioning of the defendant was interrupted when he left to take a statement from the victim. The record does not indicate whether or not the defendant was locked in the interrogation room, or otherwise guarded or restrained, during this intervening period. Nevertheless, assuming that the defendant was "detained" at the sheriff's office pending further investigation of the instant offense, for purposes of article 218.1, we conclude that he was sufficiently advised of the reason for such detention.
There is no doubt that Det. Lirette gave ambiguous responses on the subject of whether or not the defendant was advised of the reason for his detention. When he first saw the defendant at the defendant's residence, he referred to "an incident that happened to a lady across the street" and he asked the defendant to account for "his whereabouts during the night." When Det. Lirette returned to the defendant's residence and asked him to come to the sheriff's office, he apparently told the defendant that he was investigating "some crimes." At some point, the defendant's wife was informed that a burglary was being investigated. Det. Lirette admitted that he did not inform the defendant that they were investigating a rape during the first period of questioning at the Sheriff's Office, but he believed the defendant was informed of the alleged rape during the second interrogation period. Det. Lirette also stated: "I think in our general interrogation in the beginning he was informed of the, of some of the evidence that we had against him." Considering Det. Lirette's responses as a whole, while admittedly a close issue, we find that, assuming the defendant was "detained" for purposes of article 218.1, he was sufficiently advised of the reason for his detention and questioning. Accordingly, this argument is meritless.
Considering the entire record, we find that the trial court's ruling was correct. Therefore, the defendant's oral confession was properly introduced into evidence at the trial. Even assuming that one or more of the above arguments has merit and, therefore, this confession was inadmissible at trial and should have been suppressed, we find any such error in allowing the confession to be introduced at trial was harmless beyond a reasonable doubt. See La.C.Cr.P. art. 921; State v. Hankerson, 604 So.2d 1323 (La.App. 1st Cir.1992), writ denied, 612 So.2d 78 (La. 1993).
In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), a majority of the United States Supreme Court concluded that even the introduction of a coerced confession can be harmless error. In order to determine if the admission of the confession was reversible error, the reviewing court may conduct a de novo review of the record to ascertain whether the admission of the confession contributed to the defendant's conviction. 499 U.S. at 295-296, 111 S.Ct. at 1257.
As will be noted in our treatment of assignment of error number 24, the state proved beyond a reasonable doubt that the defendant raped the victim while armed with a dangerous weapon. Even if this confession, and the two items of physical evidence recovered from the defendant as a direct result thereof (the victim's television and videocassette player), had not been introduced *1304 into evidence, the remaining evidence still was sufficient to prove the defendant's guilt beyond a reasonable doubt. The victim testified at the trial concerning the events which occurred before, during, and after the rape. She knew the defendant because he lived across the street. Furthermore, the defendant confessed to Kurt Brauns, a fellow inmate, that he had raped the victim.[4] Accordingly, we conclude that the admission into evidence of the first confession, even if erroneous, did not contribute to the unanimous guilty verdict herein.
For the above reasons, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. TEN AND THIRTEEN:
These assignments of error relate to the introduction into evidence of the defendant's confession to Kurt Brauns. In assignment of error number ten, the defendant contends that the trial court erred in determining that the confession was made freely and voluntarily. Specifically, he argues that this confession was inadmissible because it "was made subject to promises!"
The defendant made a confession to a fellow prisoner, Kurt Brauns. Mr. Brauns at that time was facing a charge of second degree murder. He informed his attorney, James Alcock, of the defendant's confession. Mr. Alcock related this information to the district attorney's office. At some point, Mr. Brauns was allowed to appear before a second grand jury, which returned an indictment for manslaughter. Mr. Brauns' original second degree murder indictment was dismissed and his bond was reduced from $300,000 to $25,000. At the trial, the defense suggested that the prosecutor made a deal with Mr. Brauns or Mr. Alcock regarding Mr. Brauns' testimony about the defendant's confession in exchange for the second grand jury hearing and the bond reduction. However, while Mr. Brauns and Mr. Alcock were questioned in detail about a possible agreement with the prosecutor, their trial testimony revealed no such agreement. In any event, even assuming that some agreement existed between the prosecutor, Brauns, or Mr. Alcock, such an agreement had nothing to do with the defendant. There is no doubt that the existence of such an agreement might have cast doubt upon Brauns' credibility. Nevertheless, the defendant's assertion in brief that his confession to Brauns was somehow rendered involuntary by a "promise" made to Brauns or Mr. Alcock by Mr. Callahan is completely meritless.
In assignment of error number thirteen, the defendant contends that Mr. Brauns' testimony was inadmissible hearsay. See La.Code of Evidence art. 801 C. Mr. Brauns repeated a confession made to him by the defendant. This confession was an admission by a party and was not hearsay. See La.Code of Evidence art. 801 D(2)(a).
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. TWELVE:
In this assignment of error, the defendant contends that the trial court erred in allowing State Exhibits 17-20 to be admitted because they were "totally irrelevant and immaterial."
La.Code of Evidence art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable *1305 or less probable than it would be without the evidence.
State Exhibits 17-20 were photographs of the rear seat of the victim's vehicle taken by Detective Tabor at the TPSO motor pool. The seat fabric was a velour type of material. It contained impressions of some kind. The obvious significance of the photographs was that the impressions on the velour were caused by the televisions and the videocassette recorder taken from the victim's residence by the defendant. The victim testified that the defendant took these items from her residence and placed them on the backseat of her vehicle. Det. Tabor testified that he took photographs of the impressions on the backseat because he "found them to be unusual." However, on cross-examination, Det. Tabor testified that the photographs did not prove anything. It is true that, taken by themselves, these photographs did not prove anything. Yet, the impressions on the backseat of the victim's vehicle tended to corroborate the victim's testimony that, after the rape, the defendant took two televisions and a videocassette recorder from her residence and placed them on the backseat of her vehicle. Accordingly, State Exhibits 17-20 had some relevance to the case and, therefore, properly were admitted into evidence over the defendant's objection.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. FIFTEEN:
In this assignment of error, the defendant contends that the trial court erred "in constantly using a derogatory tone with defendant's counsel thus prejudicing defendant's right to a fair trial." In his brief to this court, the defendant states:
During the trial herein it is submitted that a running "feud" existed between the trial court and defense counsel. A review of the record will reveal numerous circumstances when the trial judge, in denying defense counsel's objections made strong or derogatory comments to counsel....
Defendant submits that the trial court's actions deprived defendant of a fair and impartial trial. It deprived him of effective legal counsel because counsel felt her "hands were tied"! Defendant has been denied all of his constitutional rights.
In briefing this assignment of error, the defendant has cited only two particular comments by the trial court, while inviting this court "to review the transcript to get a `feel' for the tension." The first referenced incident occurred during defense counsel's cross-examination of Mr. Brauns as follows:
Q But you were lucky, you got to go back to the Grand Jury a second time, right?
A Yes, because Mr. Alcock felt there would have been
Q Did you
THE COURT:
Lady
PROSECUTOR:
Your Honor.
THE COURT:
Lady, he will answer the question. He will not shut him off.
DEFENSE COUNSEL:
Your Honor, I will
THE COURT:
Stop it.
DEFENSE COUNSEL:
object to your tone to me in the courtroom.
THE COURT:
Fine. But my tone to you is
DEFENSE COUNSEL:
And I would ask that it be noted for the record.
THE COURT:
Do not cut witnesses off. You've done it through the trial. Stop it. Go ahead with your answer, sir.
The second referenced incident occurred during the prosecutor's rebuttal closing argument as follows:

*1306 First of all, the law says that the defendant has the right to test any item in evidence. You want a rape kit, you want sheets, here they are. Been (sic) sitting in the Sheriff's Office. Did the defendant have a DNA test performed? Did the defendant attempt to run the test that [defense counsel] says would exculpate her client? No. Two edged sword, isn't it, ladies and gentlemen.
But the State according
DEFENSE COUNSEL:
Your Honor, I object to this as infringing upon
THE COURT:
Ma'am, I'm sorry, go ahead.
DEFENSE COUNSEL:
As infringing upon my client's constitutional rights where it involves the burden of proof. He's suggesting that the defendant has to prove himself innocent as opposed to the State proving its case.
THE COURT:
Ma'am, please. When it isyou have a habit of objecting during argument. Stop it. When we're finish (sic) with the argument you can object for an hour. But no more, please.
DEFENSE COUNSEL:
Your Honor, I'll object to that as well.
THE COURT:
Yes, ma'am, please do that too. Go ahead.
A trial judge's disparaging remarks or intemperate criticism of defense counsel may constitute reversible error when such remarks adversely influence and prejudice the jury against the defendant. However, in order to constitute reversible error, the effect of the improper comments must be such as to have influenced the jury and contributed to the verdict. State v. Feet, 481 So.2d 667, 677 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La.1986).
After reviewing the entire trial transcript in this matter, particularly the two incidents cited above, we find that on some occasions the trial court did reprimand defense counsel. However, these comments were made during rulings on an objection. Of course, a reading of the trial transcript cannot reflect the alleged "derogatory tone" of the trial court's voice. Nevertheless, considering those comments by the trial court made in the jury's presence, we find absolutely no intent to impress the jurors with the trial court's opinion as to the defendant's guilt or innocence. See La.C.Cr.P. art. 772. In our view, even considering all of the comments as a whole, we find the trial court's comments did not rise to such a level as to endanger the defendant's right to a fair and impartial trial. See State v. Feet, 481 So.2d at 677. Nor do we find any indication that, as a result of the trial court's remarks, defense counsel's "hands were tied" as asserted by the defendant herein.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SIXTEEN:
In this assignment of error, the defendant contends that the trial court erred in sustaining the prosecutor's objection to defense counsel's questioning of Kurt Brauns regarding other charges previously filed against him. During the cross-examination of Mr. Brauns, when defense counsel asked him about previous charges, the prosecutor objected to the question on the basis that evidence of previous charges was inadmissible, unless defense counsel was referring to other pending charges which might be a part of an alleged deal between Brauns and the state. The trial court sustained the prosecutor's objection.
La.Code of Evidence art. 609.1 provides, in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted *1307 are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
In his brief to this court, the defendant argues that he should have been permitted to question Mr. Brauns about his criminal history (his arrests) in order to attack his credibility. Among other authorities, he cites State v. Robinson, 337 So.2d 1168 (La.1976). Robinson stands for the proposition that evidence of an arrest may be admissible for impeachment purposes when it is independently relevant to show bias.
Defense counsel was allowed to explore, through cross-examination, the allegation that Mr. Brauns had made a deal with the state to have his second degree murder charge reduced to manslaughter, with a corresponding reduction in his bail, in exchange for his testimony regarding the defendant's confession to him while in jail. However, before a witness may be attacked on the basis of bias through the introduction of extrinsic evidence, such as evidence of an arrest, the defendant must lay a proper foundation during the cross-examination of the witness sought to be impeached. See State v. Hookfin, 476 So.2d 481, 491 (La.App. 1st Cir.1985). In the instant case, the defendant never attempted to establish a foundation for admitting evidence of Mr. Brauns' previous charges. Neither at the trial, nor in his brief to this court, has the defendant identified these alleged previous charges or explained how or why they were independently relevant to show bias. Under these circumstances, the trial court properly sustained the prosecutor's objection.
This assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. SEVENTEEN AND EIGHTEEN:
In these assignments of error, the defendant contends that he was entitled to a mistrial due to separate, extraneous influences upon the jury regarding inadmissible other crimes evidence. Assignment of error number seventeen refers to two newspaper articles from the Houma Courier (Defense Exhibits 3 and 4). These articles mentioned that, in addition to the aggravated rape charge, the defendant also faced charges of aggravated burglary, aggravated battery, second degree kidnapping, and unauthorized use of a movable. Assignment of error number eighteen refers to two court docket sheets (Defense Exhibits 5 and 6). Defense Exhibit 5 listed the felony charges pending against the defendant and indicated that trial was scheduled for November 15, 1993. Defense Exhibit 6 indicated that the defendant was scheduled for misdemeanor arraignment on November 18, 1993, although no charge was listed.
La.C.Cr.P. art. 775 requires a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized under articles 770 or 771. However, mistrial is a drastic remedy. It has been held that when the conduct does not fall within the mandatory mistrial provisions, the trial court has the sound discretion to determine whether or not the activity or comment is so prejudicial to the defendant that he could not receive a fair trial. State v. Spooner, 550 So.2d 1289, 1296-1297 (La.App. 1st Cir.1989), writ denied, 566 So.2d 394 (La.1990).
Concerning the newspaper articles, when defense counsel introduced Defense Exhibits 3 and 4 and requested a mistrial based thereon, the trial court denied the request noting that there was "direct evidence" that the jurors had not been made aware of the contents of the articles. This ruling was correct. The instant trial took place on November 16-18, 1993. Before dismissing the jury on November 16 and 17, the trial court admonished the jurors not to read the newspaper or otherwise discuss the case. On November 18, prior to introduction of Defense Exhibits 3 and 4, defense counsel requested the trial court to question the jurors regarding whether or not they had seen or heard about a newspaper article on the case. The trial court specifically asked the jurors if they had *1308 read or talked about any newspaper articles regarding the case; and they responded in the negative. The trial court's questioning of the jurors indicated that they had not been exposed to any newspaper articles, much less prejudiced thereby. See State v. Russell, 416 So.2d 1283, 1290 (La.), cert. denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982).
Concerning the docket sheets, when introducing Defense Exhibits 5 and 6, defense counsel requested the trial court to take judicial notice that they had been posted on a bulletin board in the hallway of the courthouse. Defense counsel then requested a mistrial on the basis that the defendant's right to a fair trial had been prejudiced because "prospective jury members could have seen" the docket sheets. The trial court indicated that it had not seen the docket sheets and, therefore, it would not take judicial notice of where they had been posted. The trial court allowed defense counsel to introduce the docket sheets into evidence as Defense Exhibits 5 and 6, but it did not grant a mistrial.
We find no error in the trial court's refusal to grant a mistrial on this basis. The defendant's request for a mistrial was based on pure speculation. He did not allege that even a single juror actually had seen either docket sheet. Furthermore, the defendant did not request the trial court to question the jurors in order to ascertain whether or not they had seen the docket sheets.
These assignments of error are meritless.

ASSIGNMENT OF ERROR NO. TWENTY:
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to comments made by the prosecutor during rebuttal closing argument. Specifically, he contends that the prosecutor was allowed to argue improperly to the jury that the defendant should have to prove his innocence.
The defendant refers to the following remarks made by the prosecutor during rebuttal closing argument:
First of all, the law says that the defendant has the right to test any item in evidence. You want a rape kit, you want sheets, here they are. Been (sic) sitting in the Sheriff's Office. Did the defendant have a DNA test performed? Did the defendant attempt to run the test that [defense counsel] says would exculpate her client? No. Two edged sword, isn't it, ladies and gentlemen.
Defense counsel entered two objections in connection with the above quoted remarks. On the first occasion, the trial court admonished defense counsel for interrupting the prosecutor's argument. At the conclusion of the prosecutor's rebuttal closing argument, defense counsel renewed the objection to the above quoted remarks. The trial court noted, but tacitly overruled, both objections.
La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Noting that an accused need not testify or produce any evidence, the defendant contends that the prosecutor's comments were an improper attempt to shift the burden of proof. However, after reviewing defense counsel's closing argument, we find that the prosecutor's remarks were properly within the scope of rebuttal closing argument. On rebuttal, the prosecution had the right to answer the argument of the defendant. State v. Thomas, 504 So.2d 907, 918 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La. 1987). A key component of defense counsel's closing argument referred to the lack of certain physical evidence (the missing gun, no matching fingerprints, failure to order DNA testing, etc.). In fact, defense counsel's closing argument began and ended with the lack of DNA evidence. Noting that the defense *1309 had pretrial access to the physical evidence and could have produced its own DNA tests was clearly an attempt to respond to defense counsel's closing argument regarding the lack of DNA evidence. Therefore, it was properly within the scope of rebuttal closing argument. See State v. Jones, 593 So.2d 1301, 1313-1314 (La.App. 1st Cir.1991), writ denied, 620 So.2d 868 (La.1993); State v. Carter, 522 So.2d 1100, 1105-1107 (La.App. 1st Cir.1988).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWENTY-ONE:
In this assignment of error, the defendant contends that the trial court erred in charging the jury as to three potential aggravating circumstances when the indictment listed only one aggravating circumstance.
Prior to its amendment by Act 630, § 1, of 1993, LSA-R.S. 14:42 provided, in pertinent part:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
Initially, we note that it is not improper for the state to proceed under more than one subsection in a prosecution for aggravated rape under LSA-R.S. 14:42. State v. Thomas, 240 La. 419, 123 So.2d 872, 874-875 (1960); State v. Mills, 505 So.2d 933, 939 (La.App. 2d Cir.), writ denied, 508 So.2d 65 (La.1987). If the state merely filed a short form indictment charging aggravated rape under La.C.Cr.P. art. 465 A(39), an accused could obtain further information about the nature and cause of the charge by filing a bill of particulars. See La.C.Cr.P. art. 484. However, open file discovery would relieve the state of the necessity of answering a motion for a bill of particulars. See State v. Ohrberg, 448 So.2d 1316, 1318-1319 (La.App. 1st Cir.1984).
In his brief to this court, the defendant cites La.C.Cr.P. art. 802(1) for the proposition that it mandates the trial court to charge the jury as to the law applicable to the case. He contends that the trial court erred in charging the jury as to the additional aggravating circumstances (LSA-R.S. 14:42(1) and (2)) and concludes that he was unduly prejudiced and denied a fair and impartial trial.
In its brief to this court, the state responds as follows:
The evidence presented at the trial supported a conviction under any of the first three aggravating circumstances contained in the statute. The appellant was given full and complete open file discovery in this matter, and was therefore fully informed of the nature of the evidence against. (sic) There should, therefore, have been no surprise or prejudice resulting from the jury charge.
At first glance, the state's argument appears persuasive in light of the statutory law and jurisprudence cited above. In one sense, the state's argument is correct. The evidence introduced at the trial was sufficient to support an aggravated rape conviction under Subsections 1, 2, or 3. Ordinarily, the evidence should be limited to the particular theory under which the defendant is being prosecuted, in this case LSA-R.S. 14:42 A(3). However, any portion of the victim's testimony which would have supported an aggravated rape conviction under subsections 1 or 2 was nevertheless admissible as part of the res gestae. In any event, regardless of the res gestae evidence which might have supported a jury charge under subsections 1 or 2, we find that the trial court erred in charging the jury on subsections 1 and 2. The *1310 state specifically limited its theory of the prosecution by listing in the indictment subsection 3 exclusively. Yet, we reject the defendant's assertions that he was prejudiced or denied a fair and impartial trial by the trial court's erroneous inclusion of subsections 1 and 2 in its charge to the jury on aggravated rape. In light of the overwhelming evidence of the defendant's guilt, and considering the fact that the defendant received open file discovery in this case, we find that this erroneous jury charge was harmless beyond a reasonable doubt. La. C.Cr.P. art. 921.
For the above reasons, this assignment of error is meritless.
ASSIGNMENT OF ERROR NO. TWENTY-THREE:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a new trial. In his brief to this court, in support of his assertion that the trial court should have granted a new trial, the defendant cites all of the arguments relating to the other assignments of error. Having found no merit to those assignments of error, we likewise find no merit to the defendant's cumulation of errors argument.

ASSIGNMENT OF ERROR NO. TWENTY-FOUR:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, the defendant contends that the evidence was insufficient to support the instant conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
Prior to its amendment by Act 630, § 1, of 1993, LSA-R.S. 14:42 A(3) provided:

* * * * * *
Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
In his brief to this court, apart from restating some general law on the sufficiency of the evidence to support a criminal conviction, the defendant does not specifically explain how or why the evidence was insufficient, except for the following assertion: "Defendant reiterates and reasserts all of the errors set forth hereinabove, particularly the inadmissible confession, and/or other errors assigned." We have reviewed the other assignments of error and found them to be meritless. Furthermore, the evidence of the defendant's guilt is overwhelming. The victim's testimony established the elements of aggravated rape. She testified that the defendant forced her to submit to vaginal sexual intercourse after he struck her in the head with a metal rod. At some point, he also took possession of her gun. The defendant first confessed to Det. Lirette and, several months later, to a fellow inmate, Kurt Brauns. The confession to Det. Lirette led to the recovery of a television and a videocassette recorder which the defendant took from the victim's residence after the rape. The defendant did not testify at the trial, nor did he offer any alibi evidence.
The testimony of the victim is sufficient to establish the elements of the offense. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finders's determination of guilt. State v. Creel, 540 So.2d at 514. The unanimous guilty verdict returned in this case indicates that the jury accepted the victim's testimony that she was raped by the defendant after he struck her in the head with a metal rod and, at some point *1311 during the incident, he took possession of her gun.
After a careful review of the record, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the state proved beyond a reasonable doubt that the defendant was guilty of aggravated rape. Accordingly, the trial court did not err in denying the defendant's motion for post-verdict judgment of acquittal.
This assignment of error is meritless.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED; CASE REMANDED WITH ORDER.
NOTES
[1] We note the following patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing this sentence, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La. C.Cr.P. art. 880. Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is to be given credit for time served.
[2] In addition to the brief filed by defendant's appellate counsel, defendant filed a pro se brief. The pro se brief raised no new issues. See State v. Smalley, 599 So.2d 1090, 1091 (La.1992).
[3] In determining whether the ruling on the defendant's motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on that motion. This court also may consider all pertinent evidence given at the trial of the case. State v. Merchant, 490 So.2d 336, 339 n. 2 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La.1986).
[4] The defendant does not assert, nor do we find, that the subsequent confession to fellow inmate Kurt Brauns was in any way tainted by the alleged illegality of the first confession to Det. Lirette such that suppression of the first confession mandated suppression of the subsequent confession to Brauns. Even assuming that the first confession to Det. Lirette should have been suppressed, the subsequent confession to fellow inmate Brauns, which took place several months later, was sufficiently attenuated from the first confession to be independently admissible. See State v. Giovanni, 409 So.2d 593, 598-599 (La. 1982); State v. Freeman, 503 So.2d 753, 760 (La.App. 3d Cir.1987). Therefore, assuming that the defendant's first confession to Det. Lirette was inadmissible and should have been suppressed, we find that the subsequent confession to Kurt Brauns was properly admitted into evidence.