^ARMSTRONG, Judge.
The defendant, James 0. Boyd, was charged by bill of information with attempted second degree murder, a violation of La.R.S. 14:27(30.1). The defendant pled not guilty. The trial court denied the defendant’s motion to suppress the identification. After trial on March 7, 1995, a twelve-member jury found the defendant guilty of attempted manslaughter. He was subsequently sentenced to serve twenty years at hard labor.

FACTS:

New Orleans police officer Granville Summers Jr., was on duty about 11:30 p.m. on September 27, 1994, when he received a report of an aggravated battery in the 2400 block of Thalia Street. There he found Bryan Harris on the ground bleeding from a gunshot wound to the head. Mr. Harris was able to tell the officer that “Rip” shot him. Detective Juan Henry, after using the police computer to identify “Rip,” prepared a photographic line-up which he showed to Bryan Harris. Harris identified James Boyd as “Rip,” the man who shot him.
Bryan Harris, aged sixteen, said that about 10 p.m. on September 27, 1994, he had an argument and then a fist fight with James Boyd. The fight concerned han incident between Harris’s sister, Kawanda, and Boyd. Kawanda told Harris that Boyd insulted her. Boyd and Harris fought for about three minutes before separating; then, when the fight broke up, Boyd said, “Y’all shouldn’t have did that.” Harris admitted that he and three friends had shared four bags of marijuana that afternoon and evening; he also had consumed one beer and four or five Valium tablets. After the fight Harris and Chuck, a friend, went to get something to eat, and as they were walking home, Chuck cried out, “Gue, watch out.” (“Gue” is Harris’s nickname). Harris turned to see Boyd pointing a gun at him. Boyd fired three times. The first shot grazed the top of Harris’s head, the next missed him, and the third hit the top of his head. Harris did not lose consciousness and was able to speak to people who came out to help him. As a result of his injuries, Harris was in the hospital for two and a half months and now wears braces on both of his legs. Harris acknowledged that he had been a crack cocaine dealer for approximately three years at the time of the shooting, and that he sold cocaine on that day, but he denied having any contact with James Boyd prior to the fight at 10 p.m.
James Boyd was living with his girlfriend, Chanel Williams, at 2013 South Liberty Street on November 27, 1994. Boyd said he had been in the apartment all day until he went out to get some food. He became involved in an argument with Kawanda, Bryan Harris’s sister, and she cursed him. Then he fought with Bryan Harris because of the incident involving Kawanda. After the fight, Boyd claims he went home to calm down and he stayed there. James Boyd denied shooting Harris, being on the scene when Harris was shot, or having his friends shoot Harris, Boyd stated that on the day after the fight, he left the apartment on South | .-¡Liberty only to do some washing at his apartment in the Melpomene Housing Development.
Chanel Williams and her mother, Irma Williams, both testified that James Boyd had been at their apartment all day on November 27, 1994, except for a brief period about 10 p.m. when he was involved in a fight.

Errors Patent:

A review of the record for errors patent reveals none.

*399
Assignment of Error No. 1:

In his first assignment of error, the defendant maintains that the State failed to present sufficient evidence to carry the burden of proof beyond a reasonable doubt. He argues that the State’s proof rested completely on the testimony of the victim, an admitted drug dealer and user, and was thus unreliable.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be Ladopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. State v. Mussall, supra; State v. Green, supra.
The defendant was convicted of attempted manslaughter. La.R.S. 14:31 defines manslaughter, in pertinent part, as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed ...
La.R.S. 14:27 provides, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
The defense argues that the State’s evidence is unreliable because the victim was the only witness presented by the State and that he admitted taking drugs the evening of the shooting. Bryan Harris was the only witness to testify other than the police officers who investigated the crime. Yet, he reported the activity of that evening in detail. He described seeing the defendant at 10 p.m., fighting with him, and going back into his house; then about an hour later, after he had gone to a friend’s house, gotten something to eat and was walking home, he saw the defendant pointing a gun at him. Harris described a bullet grazing the top of his head and his falling to the ground. While he was crawling, the defendant fired two more times from a distance of five to ten feet. The defendant offers as anjgalibi that he was in his girlfriend’s apartment with her and her mother at the time of the shooting.
The defense also contends that the victim’s testimony was unreliable because he gave contradictory testimony about weapons at the scene of the fight. However, the victim first said no weapons were involved in the fight by either James Boyd or himself; then later he said that the bystanders to the fight, who were his friends, had guns.
In its brief the defense points out that the victim said he no longer deals cocaine “as a result of this.” The implication suggested, according to the defense, is that the victim no longer deals drugs because that activity caused him to get shot. However, the prosecutor asked Bryan Harris, “Have you dealt any crack since you got out of the hospital as a result of this?”, and the answer was “No.” One interpretation of this statement is that *400 Harris no longer deals drugs because he was so severely injured that he cannot work.
When testimony on factual matters is in conflict, and resolution of the conflict depends upon the credibility of witnesses, the credibility determination is a question of fact within the sound discretion of the trier of fact. State v. Jones, 537 So.2d 1244 (La.App. 4th Cir.1989). The trier of fact’s credibility determination will not be disturbed on appeal unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La.1984).
When viewed in the light most favorable to the State, sufficient proof existed for any rational juror to find beyond a reasonable doubt that the prosecution proved the essential elements of the crime of attempted manslaughter. Based on the testimony of the victim, any rational juror could have concluded that the defendant shot the victim because of defendant’s anger over the fight which _j6pccurred an hour earlier. The fact that three shots were fired at the victim at close range and that the victim was on the ground when the second and third were fired clearly indicates an intent to kill or inflict great bodily harm.
We find no merit to this assignment of error.

Assignment of Error No. 2:

The defendant in his second assignment of error claims that the sentence imposed by the trial court was excessive because the defendant has no criminal history and because of the victim’s circumstances. The trial judge sentenced Boyd to the maximum sentence permissible under La.R.S. 14:31 and La.R.S. 14:27 — twenty years imprisonment at hard labor.
Article 1, Section 20, of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. See, State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that ^maximum sentences should be reserved for the most egregious violators of the offense charged. State v. Quebedeaux, supra.
In the case at bar, the defense argues first that the defendant had no criminal history. However in its brief, the State points out that the defendant was identified by his nickname from the police computer list which contains names of people convicted of prior offenses. At the sentencing hearing the prosecutor said the defendant had no convictions but three prior arrests: resisting an officer in 1993; theft of an auto and possession of stolen property in 1993; and criminal trespass in 1991. The defense next suggests that the defendant may have been acting in self-defense because the victim was a drug dealer whose companions were armed during the fight which occurred prior to the shooting. However’, the defendant did not testify that he was frightened of the victim when the fight occurred; in fact he said he won the fight.
At sentencing in this case, the trial court recounted the facts of the case and stated that it found manifest deliberate cruelty to the victim, significant permanent injury to the victim, use of a dangerous weapon in the commission of the crime, and potential multiple victims (because someone else was standing nearby when the shots were fired). The court concluded:
I believe the sentence I am going to impose is not enough. I wish I could give you more, but the law only limits me to give you the sentence I am going to give you. You are in my opinion a person that wanted to kill another human being. For *401 all intense [sic] and purposes it is only a miracle that he is not dead.
At sentencing, the trial court justified imposing the maximum sentence for attempted manslaughter by describing the defendant’s actions in committing the offense in terms of the aggravating factors listed in the sentencing guidelines of La.C.Cr.P. art. 894.1 and finding the defendant to be the worst sort of offender |8to be sentenced under these statutes. Thus, the trial court complied with the sentencing guidelines by delineating the reasons for the sentence in the particular circumstances of this ease.
The next inquiry is whether the sentence is excessive in light of sentences imposed by other courts in similar circumstances.
Maximum or near maximum sentences for attempted manslaughter have been affirmed in many cases, including: State v. Alexander, 550 So.2d 207 (La.App. 4th Cir.1989), writ denied, 556 So.2d 55 (La.1990) (ten years); State v. Solomon, 461 So.2d 548 (La.App. 3d Cir.1984) (ten years); State v. Palmer, 447 So.2d 1159 (La.App. 3d Cir.1984) (maximum, ten and one-half years); State v. Guidry, 428 So.2d 1292 (La.App. 3rd Cir.1983) (maximum, ten and one-half years). In 1992, La.R.S. 14:31 was amended to increase the maximum penalty for manslaughter from twenty-one to forty years, almost doubling it. Thus, the defendant in the instant case was sentenced to serve twenty years at hard labor for attempted manslaughter, one-half the maximum for manslaughter. In the instant ease the trial court found that the facts supported a conviction for attempted murder, and the court supported the imposition of the maximum sentence with reasons from the sentencing guidelines. We cannot say the sentence was constitutionally excessive and find no merit to the defendant’s arguments otherwise.
For the foregoing reasons, we affirm the defendant’s sentence and conviction.

AFFIRMED.